UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. JAY JOSHI and NATIONAL PAIN CENTERS, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>AMERICAN DRUG STORES, INC. d/b/a OSCO DRUG and DOES 1-10,<br><br>    Defendants. | Case No. 1:18-cv-03490<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO RULE 11**<br><br>Honorable Judge Manish S. Shah<br><br>Hon. Magistrate Judge Sheila Finnegan |

Now come the Plaintiffs, DR. JAY JOSHI ("Joshi") and NATIONAL PAIN CENTERS, LLC ("NPC") (collectively "Plaintiffs"), and their attorneys, DAVID B. LEVIN and LAW OFFICES OF TODD M. FRIEDMAN, P.C. (collectively "Plaintiffs' attorneys"), and for their Response in Opposition to Defendant AMERICAN DRUG STORES, INC. d/b/a OSCO DRUG's ("Osco") Motion for Sanctions Pursuant to Rule 11, Plaintiffs and their attorneys state as follows:

**I.     INTRODUCTION**

Both Plaintiffs' original Complaint (Doc. #1) and their First Amended Complaint (Doc. #8) state causes of action against Osco alleging both negligent and knowing or willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* Plaintiffs allege that Osco sent numerous fax advertisements to Plaintiffs, seeking Joshi's authorization for Osco to fill prescriptions for various patients of Plaintiffs' medical practice. Plaintiffs further allege that said faxes were not transmitted within the context of an established business relationship and without Plaintiffs' express consent, thereby violating the TCPA.

Osco's Motion requests sanctions pursuant to Fed. R. Civ. P. 11 on only one basis. Osco claims Plaintiffs' allegations that the communications at issue are fax "advertisements" within the

meaning of the TCPA are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). As a component of this argument, Osco explains how over five years ago, NPC was itself sued for allegedly sending fax advertisements in violation of the TCPA. This prior lawsuit was settled and dismissed while a motion to dismiss was pending and before any substantial rulings were made by the court. NPC's attorneys in that lawsuit filed a motion to dismiss which argued that the faxes at issue were not advertisements under the TCPA. Osco somehow believes that therefore, Plaintiffs' attorneys in this case are now barred from taking the position that Osco's faxes to Plaintiffs do meet the TCPA's legal definition of advertisements.

Osco's Memorandum provides very little legal support for its position that the faxes at issue are not advertisements, beyond quoting the basic statutory definition. As Plaintiffs will show, an abundance of caselaw exists from within this very District which supports a finding that Plaintiffs' position is warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law, or at the very least, for establishing new law. Filed contemporaneously with this Response are the Declarations of Plaintiff Jay Joshi and Attorney David B. Levin, which provide further support favoring the denial of Osco's Motion.

## II. LEGAL STANDARD FOR AN AWARD OF SANCTIONS UNDER RULE 11

By signing and filing a pleading, an attorney certifies to the court that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). If this rule is violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

"If warranted, the court may award to the <u>prevailing party</u> the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2) (emphasis added).

The Advisory Committee Notes supporting Rule 11 provide helpful guidance regarding when sanctions are appropriate and when they are not. "The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed. R. Civ. P. Advisory Committee Notes to 1983 Amendment. An important factor to be considered is "whether the pleading, motion, or other paper was based on a plausible view of the law…" *Id.* When arguing for extensions, modifications, or reversals of existing law or for creation of new law, support for a litigant's theories, "even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining whether paragraph (2) has been violated." Fed. R. Civ. P. Advisory Committee Notes to 1993 Amendment.

Rule 11 motions "should not be employed…to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position,…[nor] to intimidate an adversary into withdrawing contentions that are fairly debatable…" *Id.* Additionally, "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions…[T]he court may award to the person who prevails on a motion under Rule 11 – whether the movant <u>or the target of the motion</u> – reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion." *Id.* (emphasis added).

Numerous court opinions have emphasized that Rule 11 sanctions are not to be granted lightly. The Seventh Circuit Court of Appeals underscored the Advisory Committee's Notes to the 1983 Amendment in warning, "We are mindful that we must apply Rule 11 so as not to 'chill an attorney's enthusiasm or creativity' in pursuing new and unusual legal theories." *Land v. Chicago*

*Truck Drivers, Helpers and Warehouse Workers Union*, 25 F.3d 509, 517 (1994) (citations omitted). "[A] court must take care not to penalize arguments for legal evolution." *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir. 1987).

Rule 11 "does not seek to stifle the exuberant spirit of skilled advocacy or to require that a claim be proven before a complaint can be filed." *Cleveland Demolition Company v. Azcon Scrap Corp.*, 827 F.2d 984, 988 (4th Cir. 1987). "The district court in analyzing a Rule 11 sanction should determine if there has been a 'callous disregard for governing law…'" *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Financial Services*, 9 F.3d 1263, 1269 (7th Cir. 1993) (citation omitted).

In holding that a district court abused its discretion by awarding Rule 11 sanctions, the Fourth Circuit Court of Appeals concluded, "It cannot be said that, when filed, appellants had '<u>absolutely no chance of success</u> under the existing precedent.'" *Brubaker v. City of Richmond*, 943 F.2d 1363, 1377 (4th Cir. 1991) (emphasis added, citation omitted). "Rule 11 does not require that a judge or jury agree with a plaintiff's allegation." *Id.* "Where neither the Supreme Court nor any courts within this circuit have ruled on the issue and the statute itself does not offer a clear answer, the issue is not one on which a plaintiff has 'absolutely no chance of success.'" *Id.* (citation omitted). A plaintiff "<u>need not advance a winning argument to avoid Rule 11 sanctions</u>. Any other conclusion would chill an attorney's enthusiasm or creativity in pursuing legal theories, a result that the advisory committee sought to avoid." *Id.* (emphasis added).

The Third Circuit Court of Appeals noted that Rule 11 was not formulated to be "so sweeping as to hinder zealous advocacy…" *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3rd Cir. 1987). "[T]he target is abuse – the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute." *Id.*

> [W]hen issues are close, the invocation of Rule 11 borders on the abusive: "We caution litigants that Rule 11 is not to be used routinely when the parties disagree

4

about the correct resolution of a matter in litigation. Rule 11 is intended for only exceptional circumstances." Nothing in the language of the Rule or the Advisory Committee Notes supports the view that "the Rule empowers the district court to impose sanctions on lawyers simply because a particular argument or ground for relief contained in a non-frivolous motion is found by the district court to be unjustified." Similarly, <u>just as mere failure to prevail does not trigger a sanction award, neither does advocating new or novel legal theories</u>. The Advisory Committee expressed particular concern that the Rule might be interpreted to inhibit imaginative legal or factual approaches to applicable law or to unduly harness good faith calls for reconsideration of settled doctrine…

*Id.* at 483 (emphasis added, citations omitted).

### III. LEGAL OPINIONS FROM WITHIN THIS DISTRICT SUPPORT PLAINTIFFS' CONTENTION THAT OSCO'S FAXES CONSTITUTE "ADVERTISEMENTS" UNDER THE TCPA.

With a few exceptions – none of which have been raised by Osco in its Motion – the TCPA prohibits the sending of an "unsolicited advertisement" to a "telephone facsimile machine." The sole basis raised by Osco for the imposition of sanctions against Plaintiffs' attorneys is that the prescription refill request faxes Osco sent to Plaintiffs do not constitute "advertisements" under the TCPA. An example of one such fax was attached as an exhibit to Plaintiffs' First Amended Complaint. *See* Doc. #19, at p. 9. In order to prevail on their TCPA claims, Plaintiffs will ultimately have to prove that Osco's faxes were "advertising the commercial availability or quality of any property, goods, or services…" 47 U.S.C. § 227(a)(5) and 47 C.F.R. § 64.1200(f)(1).

Osco's argument in favor of an award of sanctions is summarized in its Memorandum in Support as follows: "Had Plaintiffs' counsel consulted the TCPA's definition of an advertisement, as well as the FCC's related interpretations, it would have become abundantly clear that there is no legal support whatsoever for Plaintiffs' novel position that a prescription refill fax is an actionable advertisement." *See* Doc. #15, at p. 8. Contrary to Osco's assertion, (1) Plaintiffs' counsel did consult both the relevant statutory definition and the FCC's related interpretations, and (2) a significant number of judicial opinions exist, from within this District, supporting Plaintiffs'

position that the faxes at issue did constitute "advertisements." Based upon the contents of Osco's Motion and Memorandum in Support, Plaintiffs question whether Osco consulted these cases prior to filing its Motion for Sanctions. These opinions make it clear that Plaintiffs' claims "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

> A. **Overt Advertising Techniques Are Not Required to Maintain a Cause of Action Under the TCPA.**

Several opinions authored by judges within this District have held that a fax transmission does not have to make an obvious sales pitch to its recipient in order to qualify as an "advertisement" under the TCPA. For example, in *Green v. Time Insurance Company*, 629 F.Supp.2d 834 (N.D.Ill. 2009), the defendant argued that its fax was not an advertisement, but rather "an invitation to Green to establish a business relationship with Time." *Id.* at 837. The Honorable Judge Norgle found this assertion to be "meritless." *Id.* "The TCPA does not require that an unwanted and uninvited fax make an overt sales pitch to its recipient in order for a cause of action to exist..." *Id.* (citations omitted). Judge Norgle further noted that "an express sales offer is not a requirement of a cause of action under the TCPA…" *Id.*, at f.n. 1.

In *Stonecrafters, Inc. v. Almo Distributing New York, Inc.*, the Honorable Judge Kapala denied the defendant's Rule 12(b)(6) motion to dismiss, noting that "[a]lthough the fax does not propose a direct sale of any specific product, such overt advertising techniques are not required to maintain a cause of action under the TCPA." *Id.,* No. 1:07-cv-5105, slip op. at *2, citing *Holtzman v. Turza*, No. 08 C 2014, 2008 WL 2510182, at *2 (N.D.Ill. June 19, 2008). A copy of the *Stonecrafters* opinion is attached hereto as Exhibit A.

In another TCPA decision denying a Rule 12(b)(6) motion to dismiss, the Honorable Judge St. Eve found that while the fax at issue did not "mention explicitly any of Defendant's

6

commercially available products or services or express an intent by Defendant to market its products or services…it is plausible to conclude that Defendant's fax may have been a pretext to market its goods and services, which is sufficient to state a claim..." *North Suburban Chiropractic Clinic v. Merck & Co.,* No. 13 C 3113, 2013 WL 5170754, at *4 (N.D.Ill. Sept. 13, 2013).

The Honorable Judge Kocoras also denied a Rule 12(b)(6) motion to dismiss in a TCPA fax case, finding that "[w]hile the fax does not indicate an intent to market products or services… it is plausible that [the defendant] promoted its products and services by holding a free seminar. That is enough to state a claim under the TCPA." *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, No. 12 C 4978, 2012 WL 4120506, at *2 (N.D.Ill. Sept. 18, 2012).

Only a few months ago, the Honorable Judge Tharp denied a Rule 12(b)(6) motion to dismiss in *Mussat v. Enclarity, Inc.*, No. 16-CV-07643, 2018 WL 1156200 (N.D.Ill. March 5, 2018), and discussed this issue at length at *3-4:

> A fax need not make an overt sales pitch to its recipient for a TCPA claim to exist…Courts have also held that a fax need not explicitly mention a commercially available product or service, or express an intent by the defendant to market its products or services if the fax was a "pretext" to marketing the defendant's goods and services…At the motion to dismiss stage, plausible allegations that the fax was used to further the defendant's commercial efforts or advance its marketing operations may suffice to state a claim that the fax was a pretext to an advertisement….According to one district court, "an otherwise benign fax may violate the TCPA, if it ultimately leads to the promotion of goods or services." *Comprehensive Health Care Sys. of the Palm Beaches, Inc. v. M3 USA Corp.*, 232 F. Supp. 3d 1239, 1242 (S.D. Fla. 2017).

The Honorable Judge Dow has also recognized that "a fax can constitute an advertisement even if the vast majority of its content has nothing to do with promoting a service's availability or quality." *Able Home Health v. Onsite Healthcare,* No. 16-cv-8219, 2017 WL 2152429, at *2 (N.D.Ill. May 17, 2017), citing *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 687 (7th Cir. 2013).

7

**B.     The TCPA Only Requires that an Offending Fax Advertise the Commercial Availability or Quality of Property, Goods, and/or Services.**

While Osco's faxes arguably did not make an obvious sales pitch to Plaintiffs, all that is required by the TCPA is that they advertised "the commercial availability or quality of any property, goods, or services…" 47 U.S.C. § 227(a)(5). *See also* 47 C.F.R. § 64.1200(f)(1). As the Seventh Circuit Court of Appeals once pondered in this context, "[W]e are tempted to ask what part of 'any' [the defendant] finds hard to understand." *Ira Holtzman, C.P.A.*, 728 F.3d at 687.

In *Green v. Anthony Clark International Insurance Brokers, Ltd.*, No. 09 C 1541, 2010 WL 431673 (N.D.Ill. Feb. 1, 2010), the Honorable Judge Kennelly examined the meaning of the word "advertisement" in the context of the TCPA. In *Green*, the defendants argued that "the TCPA does not provide a clear definition of the term 'unsolicited advertisement' and thus 'does not provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited.'" *Id.* at *4 (citation omitted). Judge Kennelly flatly rejected this argument. "A person of ordinary intelligence knows that an 'advertisement,' as used in the TCPA, is an announcement of something offered for sale and that 'advertising' is the act of announcing something for sale. The phrase 'commercial availability...of any property, goods, or services' is also easily understood by a person of ordinary intelligence as describing a property, good, or service that is available for sale or other commercial arrangement." *Id.* at *5.

While Osco's faxes to Plaintiffs may not have overtly announced that their purpose was to sell prescription medications, such an allegation is not so far-fetched as to be sanctionable under Rule 11. To the contrary, it is well grounded in fact and common sense. "[R]equiring a fax to propose a specific commercial transaction on its face takes too narrow a view of the concepts of commercial activity and promotion, and ignores the reality of many modern business models." *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459, 468 (4th Cir. 2018).

8

Osco acts as though the sole purpose for sending its prescription refill faxes was to perform an important free service without which the medical profession could not function. However, Osco's view of these faxes as purely transactional in nature ignores the massive size of the for-profit pharmaceutical industry in this country. Anyone who has ever filled a prescription should be aware that the medication they received was not free. Whether a patient pays the cost of his or her medication, or the cost is paid by medical insurance or some government benefit, someone is paying for it. The cost of medication is obviously paid to the pharmacy that fills a prescription.

Data obtained from the IQVIA National Prescription Audit database, as reproduced on the website of the Henry J. Kaiser Family Foundation, exemplifies the fact that the sale of prescription medications is an enormous business sector in the United States. Titled "Retail Sales for Prescription Drugs Filled at Pharmacies by Payer," this data estimates well over $397,000,000,000 worth of prescription drugs were sold throughout the country in 2017. *See* https://www.kff.org/health-costs/state-indicator/total-sales-for-retail-rx-drugs. Plaintiffs do not offer this data for proof of any specific fact, but only to underscore this obvious point – when a pharmacy fills a prescription written by a doctor, the pharmacy is selling the prescribed medication to that doctor's patient. The Declaration of Plaintiff Jay Joshi, which has been filed contemporaneously with this Response brief, provides further support for this proposition.

As the Honorable Judge Tharp stated, where a fax "declares the availability of the defendant's services by listing those services and providing the defendant's contact information, [it] may constitute an advertisement under the TCPA." *Mussat v. Enclarity, Inc.*, No. 16-CV-07643, 2018 WL 1156200, at *4 (N.D.Ill. March 5, 2018). In this case, Plaintiffs allege that each of Osco's faxes announced the availability of a specific medication which Osco's pharmacies were offering to dispense. They provided the contact information for the Osco pharmacy at which the

9

medication was available for sale to the patient. If such an allegation is sufficient to overcome a motion to dismiss, then it is certainly sufficient to prevent an award of sanctions under Rule 11.

  C. **Faxes Do Not Have to Seek to Make Sales Directly to Their Recipients in Order to Qualify as Advertisements Under the TCPA.**

Osco also argues in its Motion that the faxes do not suggest an available good or service to purchase, "let alone a good or service *available to Plaintiffs*." *See* Doc. #15, at p. 8 (emphasis in original). However, legal authority exists, some from within this District, which stands for the proposition that the recipient of the fax does not have to be the one who will ultimately purchase the property, goods, or services available from the sender of the fax.

In *AL and PO Corporation v. Med-Care Diabetic & Medical Supplies, Inc.*, No. 14 C 01893, 2014 WL 6999593 (N.D.Ill. Dec. 10, 2014), the Honorable Judge Chang analyzed this very issue and found that the plaintiff had stated a claim for relief under the TCPA. Judge Chang referred to the Webster's Dictionary definition of "advertising" and noted that "in no way is the audience restricted to a direct consumer of the publicized good or any other party. A toy commercial is no less an advertisement even though its primary target is children, who would not be expected to purchase the product themselves (rather, their parents would be the actual buyers)." *Id.* at *3. "[A]n advertisement does not cease to be an advertisement simply because the recipient is not necessarily a definite and direct buyer…" *Id.* at f.n. 2. *See also Mussat v. Enclarity, Inc.*, No. 16-CV-07643, 2018 WL 1156200, at *5 (N.D.Ill. March 5, 2018) ("[T]he TCPA does not require that the fax recipient be a potential 'direct buyer' of the goods or services promoted in the fax.")

While not within the context of the TCPA, the Eleventh Circuit Court of Appeals addressed this issue in a similar situation. "[W]e find it insignificant that Elan directed its [advertising] efforts at doctors, hospitals, and other health professionals through the trade press rather than at actual consumers. Given that physicians, who prescribe drugs to their patients, often serve as a conduit

10

between drug manufacturers and consumers, it is hardly surprising that Elan would focus its efforts on medical professionals rather than taking out an advertisement in a newspaper of general circulation." *Elan Pharmaceutical Research Corporation v. Employers Insurance of Wausau*, 144 F.3d 1372, 1378 (11th Cir. 1998). "As one commentator has observed: '[C]ommunications intended to induce the doctors to prescribe a pharmaceutical manufacturer's drugs for the doctors' patients would constitute 'advertising' even though the communications were never observed by the ultimate consumers, the patients...[just as] a cereal manufacturer's Saturday morning commercials are 'advertising' even though they are aimed at children, not their parents who actually buy the product....'" *Id.*, at f.n. 11, citing Jan T. Chilton, *Expanding Boundaries of the Advertising Injury Coverage*, 620 PLI/Comm 165, 175 (1992).

Another court reached a similar conclusion. In *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F.Supp.3d 482 (W.D.Mich. 2014), one defendant argued that because its faxes regarding orthopedic devices were sent to primary care physicians who neither bought nor prescribed orthopedic devices, a commercial nexus between the fax recipients was lacking as a matter of law. The court rejected this argument, stating that it found "nothing in the TCPA mandating one degree of separation between buyer and seller for material to constitute an advertisement as a matter of law… such a separation does not mandate resolution as a matter of law." *Id.* at 491. This opinion is analogous to the case at hand, where the recipient of the fax was a doctor, yet the purchasers of the orthopedic devices (or medications) would be his patients.

If the fact that Osco's faxes did not propose a specific commercial transaction between Osco and Plaintiffs is irrelevant to the determination of whether they constitute "advertisements" under the TCPA, then it should not support a finding in favor of Rule 11 sanctions against Plaintiffs or their attorneys.

**D.     Application of the Relevant Decisions to the Faxes at Issue in This Case.**

The decisions cited above tell us that in order to constitute an advertisement under the TCPA, a fax does <u>not</u> have to: (1) make an overt sales pitch; (2) make an express sales offer; (3) propose a direct sale; (4) explicitly mention one of the sender's products; (5) indicate an intent to market a product; (6) devote the vast majority of it content to promotion; or (7) be transmitted to the direct buyer of the product. It must only advertise "the commercial availability or quality of any property, goods, or services…" 47 U.S.C. § 227(a)(5) and 47 C.F.R. § 64.1200(f)(1).

Therefore, the fact that the faxes at issue in this case did not make overt sales pitches to Plaintiffs is irrelevant. So too is the fact that the faxes did not make an express sales offer to Plaintiffs. However, the faxes did propose direct sales of prescription medication (from Osco to Plaintiffs' patients). The faxes also indicated an intent to market specific prescription medications from Osco to Plaintiffs' patients, which were explicitly mentioned in each fax. It is also irrelevant that the faxes did not devote the vast majority of their content to promotion and that they were not transmitted to the actual buyers of the products (i.e. Plaintiffs' patients).

Osco contends that the faxes contain "no promotional or marketing component, however small" and that they "contain no commercial content and speak of no available good or service to purchase". *See* Doc. #15, at p. 8. These contentions are not only irrelevant to the issues at hand, but they are also wrong. In light of the many judicial opinions cited above, these facts, even if they were true, would likely not warrant a dismissal of Plaintiffs' claims under Rule 12(b)(6), let alone sanctions under Rule 11. It is clear that the law within this District does not require a fax to use obvious advertising techniques in order to constitute an "advertisement" under the TCPA.

## IV. PLAINTIFF'S PRIOR TCPA LITIGATION EXPERIENCE IS IRRELVANT TO THE ISSUES BEFORE THIS COURT.

Osco argues extensively in favor of Rule 11 sanctions based upon the fact that NPC was itself a Defendant in a TCPA fax case over five years ago. However, Osco provides no legal explanation as to why NPC's prior TCPA litigation experience warrants Rule 11 sanctions. The doctrine of judicial estoppel might provide support for such an argument, but it is inapplicable to the facts at hand.

"'Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.'" *Matter of Cassidy*, 892 F.2d 637, 640 (7th Cir. 1990), quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). In order for judicial estoppel to apply, the litigant must have <u>succeeded</u> in maintaining the allegedly prior inconsistent position. "The party to be estopped [must] have convinced the court to accept its position in the earlier litigation. A party is not bound to a position it unsuccessfully maintained." *Id.* Furthermore, the current position sought to be estopped must be "clearly inconsistent" with the prior position taken by the same litigant. *Id. See also New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

NPC was sued in 2013 for allegedly sending unsolicited fax advertisements in violation of the TCPA. A review of the docket entries for the case at issue, *Frantz v. National Pain Centers, LLC*, No. 1:13-cv-00028 (N.D.Ill.), shows that NPC filed a motion to dismiss, which was fully briefed. However, before the court ruled on the motion to dismiss, the parties filed a notice informing the court that the alleged class action claims had instead been settled on an individual basis. The *Frantz* court never ruled on the motion to dismiss, nor did it make any other substantive rulings in that case. More importantly, the fax at issue in the *Frantz* case was much different than the faxes Osco sent to Plaintiffs, which form the basis of Plaintiffs' claims in this case.

Osco's lengthy discussion of the *Frantz* case is nothing more than the proverbial "red herring." There is no legal support for the contention that in trying to defend itself against an alleged violation of the TCPA five years ago, NPC is now prevented from bringing its own TCPA fax claims based upon an entirely different fax transmission. If there is no legal basis for Osco to claim that NPC is estopped from taking the legal position is has taken in this case, then sanctions under Rule 11 cannot be appropriate either.

## V. THE COURT HAS DISCRETION TO AWARD PLAINTIFFS' ATTORNEYS' FEES FOR THEIR TIME SPENT DEFENDING OSCO'S MOTION FOR SANCTIONS.

Rule 11 provides that "the court may award to the <u>prevailing party</u> the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2) (emphasis added). The Court's authority is not limited to awarding attorney's fees only to the party who filed the motion. "Rule 11 also authorizes courts to award 'to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting *or opposing* the motion.' Fed.R.Civ.P. 11(c)(1)(A). Compliance with the safe harbor provision is not required when a party merely receives attorneys' fees and costs for successfully defending against a Motion for Sanctions." *Boim v. Quranic Literacy Institute*, No. Civ. 00 C 2905, 2003 WL 1956132, at *3 (N.D.Ill. April 24, 2003) (emphasis in original, citations omitted).

Osco's Memorandum provides little in the way of support for its motion. Osco made a few citations to the TCPA statute and supporting FCC rulings. The three TCPA court opinions cited by Osco provide no support for a finding that Plaintiffs position is not warranted by existing law, or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law. The page limitations set forth in Local Rule 7.1 prohibit Plaintiffs from

14

examining those cases in detail here, but Plaintiffs believe the Court will agree that those decisions are of limited applicability to the situation at hand.

In light of all of the opinions discussed above, most of which were authored by judges within this very District, it simply does not follow that Plaintiffs' Complaint and First Amended Complaint were not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Wherefore, Plaintiffs respectfully request this Honorable Court enter an order (1) denying Osco's Motion for Sanctions Pursuant to Rule 11 with prejudice; (2) ordering Osco to file an Answer to Plaintiffs' First Amended Complaint; (3) awarding Plaintiffs their reasonable expenses, including attorneys' fees, incurred in responding to Osco's Motion for Sanctions; and (4) granting such other relief deemed just and proper by this Court.

RESPECTFULLY SUBMITTED,

DR. JAY JOSHI and NATIONAL PAIN CENTERS, LLC

By: /s/ David B. Levin
Attorney for Plaintiffs
Illinois Attorney No. 6212141
Law Offices of Todd M. Friedman, P.C.
333 Skokie Blvd., Suite 103
Northbrook, IL 60062
Phone: (224) 218-0882
dlevin@toddflaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 30, 2018, a copy of the foregoing Response in Opposition to Motion for Sanctions was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ David B. Levin
Attorney for Plaintiffs